STATE OF MAINE                                    SUPERIOR COURT

Cumberland, ss.                                        Civil Action

PROPRIETORS OF UNION WHARF

Plaintiff

v.                                        Docket No. PORSC-CV-17-411

PROCK MARINE COMPANY

REC'D CUMB CLERKS O
NOV 20 '17 AM 10:47

Defendant

## ORDER ON DEFENDANT'S MOTION TO DISMISS

Defendant Prock Marine Company has filed a Motion to Dismiss aimed at Count II of the Complaint filed by Plaintiff Proprietors of Union Wharf. Plaintiff opposes the Motion. The court elects to decide the Motion without oral argument. *See* M.R. Civ. P. 7(b)(7).

In this case, Plaintiff alleges that it is a corporation that owns the Union Wharf in Portland. Plaintiff claims that Defendant is liable for defects in the Defendant's design and construction of a berthing facility at Union Wharf. Plaintiff's initial Complaint and its First Amended Complaint assert four common law counts and a statutory count. The latter count, Count II, alleges violations of the Maine Deceptive Trade Practices Act, 10 M.R.S. §§ 1210 *et seq.* ["the Act"], includes a demand for attorney fees, which are available under the Act. Defendant has denied liability in its answer.

Defendant's Motion to Dismiss asserts that Count II, and specifically any claim

1

for an award of attorney fees or punitive damages under the Act, should be dismissed because the pertinent provisions of the Act are inconsistent with the federal admiralty law framework that governs this case. Plaintiff's opposition asserts that, even assuming Plaintiff's claims sound in maritime law or admiralty, this court can exercise jurisdiction under the "saving to suitors" clause in the federal admiralty jurisdiction statute. *See* 28 U.S.C. § 1333. Defendant's reply memorandum responds that the issue raised by Defendant's Motion to Dismiss is not an issue of jurisdiction, but rather a remedies issue.

Defendant contends that, because Plaintiff's claims relate to damage or loss to a wharf for vessels in navigable waters, federal admiralty law applies. If it does, then any rules of state law and state statutes, such as the Act, must give way to the extent they are in conflict with federal admiralty law. *See Offshore Logistics, Inc. v. Tallentire*, 477 U.S. 207, 223, 106 S. Ct. 2485, 91 L. Ed. 2d 174 (1986).

Plaintiff's opposition appears to accept the premise that admiralty law applies, but the court's own research suggests that the applicability of admiralty law is by no means a given.

For a tort claim to be within admiralty jurisdiction, the alleged injury or damage needs to have been caused by a vessel on navigable waters, or at least involve a vessel in some way. *See* Admiralty Extension Act, 46 U.S.C. § 30101. "Piers and docks [are] deemed extensions of land for purposes of determining admiralty jurisdiction, and so injuries inflicted to or on them [are] not compensable under the maritime law." *Victory Carriers, Inc. v. Law*, 404 U.S. 202, 206-07, 92 S. Ct. 418, 30 L.

2

Ed. 2d 383 (1971) (internal quotes and ellipses omitted). On its face, Plaintiff's claim is for damage to or deterioration of a pier or dock, not caused by or involving any vessel, so, considered as a tort claim, it does not trigger the application of admiralty law.

Plaintiff has not asserted any breach of contract claim, but if Plaintiff's claim involves a "maritime contract," admiralty law might still apply. However, even assuming that Defendant performed work on Plaintiff's pier under one or more contracts, it is not clear that the contract or contracts would be deemed "maritime contracts" subject to the law of admiralty.

"The boundaries of admiralty jurisdiction over contracts -- as opposed to torts or crimes -- being conceptual rather than spatial, have always been difficult to draw." *Kossick v. United Fruit Co.*, 365 U.S. 731, 735, 81 S. Ct. 886, 6 L. Ed. 2d 56 (1961). Whether a contract is governed by maritime law is a fact-specific determination, focused mainly on the connection between the subject matter of the contract and maritime service or shipping. *See Norfolk & Southern Railway Co. v. Kirby*, 543 U.S. 14, 23, 125 S. Ct. 385, 160 L. Ed. 2d 283 (2004).

Assuming that there is or was a contract or contracts for Defendant to construct or repair Plaintiff's wharf, contracts for the construction or repair of a wharf or pier do not necessarily qualify as maritime contracts. As one court has noted,

> It could hardly be contended that a contract for building or repairing a wharf is embraced in the class of contracts denominated maritime, any more than it could (and not with as much propriety) be contended that a contract to build a ship is a maritime contract; and it has been expressly held by the Supreme Court of the United States that a contract for

3

building a ship is not of a maritime character, and therefore not within the admiralty jurisdiction. The only contracts relating to wharves that are of a maritime character are those for wharfage, for wharf service rendered to vessels, and such claims are due to the lessee and not to the lessor of the wharf.

*Upper Steamboat Co. v. Blake*, 2 App. D.C. 51, 57 (D.C. App. 1893).

In *Riverside Construction Company v. Entergy Mississippi, Inc.*, the district court applied that principle in determining that a contract for the repair of a dock that had been damaged by a barge was not a "maritime contract." 2014 U.S. Dist. LEXIS 187449 at * 25-26, 2014 WL 11513135 (S.D. Miss.), *aff'd*, 626 F. Appx. 443 (5th Cir. 2015). In *Laredo Offshore Constructors, Inc. v. Hunt Oil Company*, the United States Court of Appeals for the Fifth Circuit concluded that a contract for the construction of a stationary oil and gas platform did not qualify as a maritime contract, even though vessels were used in the course of construction. 754 F.2d 1223, 1229-31 (5th Cir. 1985). In *New Hampshire Insurance Company v. Home Savings & Loan Company*, the Sixth Circuit Court of Appeals observed the cases dealing with wharves and dry-docks "suggest a conceptual distinction between a contract relating to a particular vessel involved in a commercial operation as opposed to the overarching operation of a fixed structure that happens to involve boats." 581 F.3d 420, 431 (6th Cir. 2009).

The cases cited by Defendant in support of its contention that admiralty law applies do not involve contracts for the construction or repair of wharves or other stationary facilities, and are distinguishable on that ground alone.

There is no contract in the present record, and the allegations of the Complaint do not necessarily establish that the Plaintiff's claims are subject to the law of

4

admiralty.    Accordingly, the Defendant's Motion must be denied.    However, Defendant's objection to Count II is noted and the Defendant may renew its request, possibly at the summary judgment stage, on the basis of a developed factual record.

IT IS ORDERED:

Defendant's Motion to Dismiss is denied.

Pursuant to M.R. Civ. P. 79(a), the Clerk is directed to incorporate this Order by reference in the docket.

Dated November 20, 2017

_____
A. M. Horton, Justice

Proprietors of Union Wharf v. Prock Marine Company

Attorneys for Plaintiff:

George Burns, Esq.
James Monteleone, Esq.
Bernstein Shur Sawyer & Nelson
PO Box 9729
100 Middle Street
Portland, ME  04104-5029

Attorney for Defendant:

William Welte, Esq.
Welte & Welte PA
13 Wood Street
Camden, ME  04843-2036